# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

KRYSTA M. SMITH,                           )
                                           )
      **Plaintiff,**                      )
                                           )
**v.**                                     )          **CAUSE NO. 1:24-cv-00238-ALT**
                                           )
COMMISSIONER OF SOCIAL                     )
SECURITY, *sued as Frank Bisignano,*[1]    )
*Commissioner of Social Security,*         )
                                           )
      **Defendant.**                     )

## OPINION AND ORDER

Plaintiff Krysta M. Smith appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying her application under the Social

Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1). For the following

reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Smith applied for SSI in April 2017, alleging disability as of June 20, 2005. (ECF 9

Administrative Record ("AR") 227).[2] Her claim was denied initially and upon reconsideration.

(AR 154-56, 163-66). On November 29, 2018, administrative law judge ("ALJ") Terry Miller

conducted an administrative hearing, at which Smith, who was represented by counsel; a

witness; and a vocational expert ("VE") testified. (AR 46-129). On February 1, 2019, the ALJ

---

[1] Frank Bisignano became the Commissioner of Social Security in May 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for his predecessor as the defendant in this suit. *See La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at *n.2 (S.D. Ind. May 15, 2025).

[2] The AR is voluminous in this case, consisting of more than 17,000 pages. Given this volume, the AR was filed by the Commissioner in nine batches of approximately 2000 pages each. (*See* ECF 9 through ECF 9-9). Herein, the first batch will be cited as "AR", the next as "AR-1", and so on. The AR page numbers cited correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

rendered an unfavorable decision to Smith, concluding that she was not disabled because she could perform a significant number of unskilled, light-exertional jobs in the national economy despite the limitations caused by her impairments. (AR 26-41). The Appeals Council denied Smith's request for review (AR 12-15), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Smith filed a new SSI application in January 2020. (AR 1023-39). On February 1, 2020, Smith filed a complaint in this district court requesting review of the Commissioner's final decision. (*See Smith v. Comm'r of Soc. Sec.*, No. 1:20-cv-00055-HAB-JPK, ECF 1). On February 22, 2021, the Court reversed the Commissioner's decision and remanded the case to the Commissioner for further proceedings. (*Id.* at ECF 28).

On remand, Smith's initial claim was consolidated with her January 2020 application. (AR 697-98, 822). On June 10, 2021, ALJ Stephanie Katich held a new administrative hearing, at which Smith, who was represented by counsel, and a VE testified. (AR 691-733). Smith amended her alleged onset date to April 13, 2017, at that hearing. (AR 666, 700). On August 17, 2021, the ALJ issued Smith an unfavorable decision. (AR 665-83). On December 16, 2021, Smith filed another appeal to the district court. (*See Smith v Comm'r of Soc. Sec.*, No. 1:21-cv-00465-PPS-SLC, ECF 1). On October 24, 2022, the Court issued a decision reversing the Commissioner's decision and remanding the case a second time for further proceedings. (*Id.* at ECF 24).

On second remand, ALJ Katich held another hearing on September 20, 2023, at which Smith, who was represented by counsel, a medical expert, and a VE testified. (AR 1721-57). A supplemental hearing was held on January 18, 2024, at which Smith, who was represented by counsel, a VE, and a different medical expert, testified. (AR 1685-1720). On February 12, 2024,

the ALJ issued an unfavorable decision that spanned 32 pages, again concluding that Smith could perform a significant number of unskilled, light-exertional jobs in the national economy despite the limitations caused by her impairments. (AR 1638-70).

On June 7, 2024, Smith filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). In this appeal, Smith argues that the ALJ made harmful errors by: (1) cherry-picking the evidence and playing doctor when reviewing the consultative physicians' opinions, failing to build a logical bridge from the evidence to the ALJ's conclusions; and (2) failing to include all supported limitations in the assigned mental residual functional capacity ("RFC"). (ECF 20 at 6).

On the date of the Commissioner's final decision, Smith was thirty-six years old (AR 239) and had a twelfth-grade education through home schooling (AR 1691, 1726). She worked after her disability application date, but such work did not rise to the level of substantial gainful activity (AR 1641); she had no past relevant work (AR 1667). Smith alleges disability due to a major depressive disorder, generalized anxiety disorder, unspecified personality disorder, panic disorder with agoraphobia, post-traumatic stress disorder (PTSD), rheumatoid arthritis in her knees; thyroid disease, type II diabetes, moderate non-proliferative diabetic retinopathy, eustachian tube dysfunction, Class 3 severe obesity, and cervicalgia. (ECF 20 at 5-6 (citations omitted); *see also* AR 243).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. § 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### B. The Commissioner's Final Decision

At step one of the Commissioner's final decision, the ALJ noted that while Smith had worked after her alleged onset date of April 13, 2017, such work did not rise to the level of substantial gainful activity. (AR 1641). At step two, the ALJ found that Smith had the following severe impairments: generalized anxiety disorder, panic disorder, major depressive disorder, unspecified personality disorder, PTSD, type II diabetes, asthma, headache, cervicalgia, bilateral thumb tendinitis/trigger thumbs, status post thumb surgeries, degenerative disc disease of the thoracic spine, mild dextroscoliosis of the lumbar spine, osteoarthritis/rheumatological arthritis

of both knees, obesity, bilateral hearing loss/tinnitus/acute mastoiditis, and history of autoimmune disorder/IgA deficiency. (AR 1646). At step three, the ALJ concluded that Smith did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

The ALJ assigned Smith the following RFC:

[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except that the claimant can occasionally climb ramps and stairs, she can never climb ladders, ropes, scaffolds, she can occasionally balance, stoop, kneel, crouch and crawl, she can frequently handle and finger with the bilateral upper extremities, she should avoid work activity requiring a forceful grip or grasp, such as turning knobs or levers, she should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, she should avoid all exposure to unguarded moving machinery, unprotected heights, wet, slippery, uneven or moving surfaces, she should avoid loud noise (as defined in the DOT), she should avoid working outdoors, and she needs instructions presented in writing or face to face communications. In addition, the claimant should avoid work activity requiring fast paced production requirements, such as high speed production lines where others are depending on the claimant, she can tolerate occasional interactions with coworkers, supervisors and the general public, she can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting, with few, if any, changes in terms of work setting, tools and processes.

(AR 1656).

Smith had no past relevant work to consider at step four. (AR 1667). At step five the ALJ found that a hypothetical individual of Smith's age, education, experience, and RFC could perform a significant number of unskilled, light-exertional jobs in the national economy, including checker, routing clerk, and sorter. (AR 1668). Accordingly, Smith's applications for DIB and SSI were denied. (AR 1670).

## C. The Opinions of Dr. Jan and Nurse Fiandt

Smith first argues that the ALJ cherry-picked the evidence and played doctor when considering the 2017, 2021, and 2022 opinions of Abdali Shakoor Jan, M.D., and the June 2022

opinion of Lauren Fiandt, N.P. (ECF 20 at 8-13). Contrary to Smith's assertion, the ALJ properly considered this evidence and built a logical bridge from the evidence to her conclusions.

### 1. Relevant Law

"An ALJ need not address every piece of evidence or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). Rather, an ALJ is "subject to only the most minimal of articulation requirements." *Id.* All that is required is that the ALJ "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Id.* (citations and internal quotation marks omitted). In shorthand terms, an ALJ "needs to provide a logical bridge from the evidence to [her] conclusion." *Id.* (citation and internal quotation marks omitted). Having said that, "[t]he ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

### 2. Dr. Jan's Opinions

Dr. Jan examined Smith on three occasions for a disability physical. In August 2017, his examination revealed normal concentration, attention span, and social interaction; intact remote and recent memory; 5/5 muscle and grip strength; an ability to perform fine and gross movements on a sustained basis bilaterally; and abnormal heel/toe and tandem walking in that Smith "states she is unable to perform [it]." (AR 361). Dr. Jan assigned the following medical

source statement:

> The patient states that she can sit for 30 minutes and states she can stand for 30 minutes ⦗ states she would need to reposition frequently. [S]he states she can walk for 10 minutes but would need to take it slowly. Patient has normal fine motor skills with normal handling of objects. Normal concentration and social interaction. Remote and recent memory intact. Normal hearing, speech and vision. [S]he states she [can] carry twenty pounds short distances. Patient states her daughter weighs 19.8 lbs and she is able to carry her. [S]he states she can lift ten pounds over her head one time.

(AR 361).

In November 2021, Smith told Dr. Jan that she recently started using a rolling walker and was using a cane previously "due to arthritis and having no cartilages in her ankles." (AR-1 377). Dr. Jan's examination revealed intact remote and recent memory; normal attention span; 5/5 muscle strength and 3/5 grip strength; normal range of motion; a negative straight leg raise test; normal sensation; an inability to perform fine and gross movements on a sustained basis but "with the ability to button, zip and pick up coins"; and abnormal heel/toe walking but normal tandem walk. (AR-1 382-83). Dr. Jan issued the following medical source statement:

> The patient states that she can sit for 5 minutes and stand for 5 minutes. [S]he states she can walk for 1 block[] before having to stop due to pain and weakness. Patient has normal fine motor skills with normal handling of objects. Normal concentration and social interaction. Remote and recent memory intact. Abnormal hearing. Normal speech and vision. [S]he cannot carry twenty pounds short/long distances. [S]he cannot lift ten pounds over their head one time.

(AR-1 383).

In May 2022, Smith told Dr. Jan that she used a cane on good days but a walker "when [her] knees [were] really bad[.]" (AR-1 597). Her gait was sustainable without an assistive device. (*Id.*). An examination revealed intact remote and recent memory; normal attention span; 4/5 muscle strength in her upper extremities and 5/5 in her lower extremities; 4/5 grip strength; able to perform fine and gross movements on a sustained basis, though it "takes her some time";

8

slow, unsteady heel/toe and tandem walking; decreased lower extremity range of motion but otherwise normal; and a negative straight leg raise test. (AR-1 601). Dr. Jan assigned the following medical source statement:

> Based on physical exam findings, medical history and imaging/laboratory results, the patient can sit for 30 minutes and stand for 15 minutes. Patient can walk for 1 block[] before pain to her lower back and bilateral knees occurs. Patient has normal fine motor skills with normal handling of objects. Normal concentration and social interaction. Patient indicates understanding throughout the examination and elicits cognizance. Remote and recent memory intact. Normal hearing, speech and vision. [S]he cannot carry twenty pounds short distances. [S]he cannot lift ten pounds over their head one time.
>
> Patient is in agreement with the above statement.

(AR-1 602-03).

The ALJ discussed each of Dr. Jan's three examinations in her decision (AR 1661-62), but was "not persuaded" by any of them (AR 1664). The ALJ explained:

> All of these opinions suggest that the claimant could not even sustain the demands of sedentary work (Ex. 3F, 29F, 34F). However, during the August 2017 and November 2021 assessments, many of Dr. Jan's "opinions" appear to be a recitation of the claimant's own statements, without any indication whether Dr. Jan also believed that this was the most that the claimant could do, with her impairment-related limitations. Moreover, Dr. Jan did not cite to specific clinical findings in support of these "opinions" (Ex. 3F p. 04, 29F p. 13). Then, in May 2022, Dr. Jan wrote that his opinions were based on physical exam findings, medical history, and imaging/lab results, and he also noted that the claimant was in agreement with his statement (Ex. 34F). Nevertheless, the most recent opinion – which is inconsistent with the longitudinal evidence that confirms the claimant can perform light work – does not discuss specific objective evidence that supports the limitations that, for example, the claimant could walk for one block before she had pain in her lower back and knees. Accordingly, it is not persuasive (Ex. 34F).

(AR 1664-65).

Smith challenges the ALJ's reasoning in discounting Dr. Jan's opinions. First Smith contends the ALJ erred by discounting Dr. Jan's August 2017 and November 2021 opinions on the grounds they "appear to be a recitation of the claimant's own statements." (AR 1664; *see*

ECF 20 at 11). Smith acknowledges Dr. Jan used the qualifier "patient states" or similar language before most limitations, but emphasizes Dr. Jan did not do so as to Smith's inability to carry twenty pounds or lift ten pounds over her head in the November 2021 opinion, making "clear what [limitation] is coming from [Smith] versus what is coming from Dr. Jan." (ECF 11 at 19 (citation omitted)). But it is not so clear. "[W]hen a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion." *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (citation omitted). Here, Dr. Jan did not cite any evidence to support the lifting and carrying limitation, and the basis for such limitation is not readily apparent from Dr. Jan's examination results. And although Dr. Jan recited that his May 2022 medical source statement was based on "physical exam findings, medical history and imaging/laboratory results" (AR-1 601), as the ALJ observed, Dr. Jan did not actually identify specific evidence in support of the limitations he opined. *See* 20 C.F.R. § 416.920c (explaining that supportability and consistency are the most important factors when an ALJ considers the persuasiveness of a medical source opinion).

Smith also notes that Dr. Jan's November 2021 opinion indicated Smith did not have the ability to perform fine and gross movements on a sustained basis. (ECF 11 at 19). But Dr. Jan did not provide a clinical basis for this limitation either. (AR-1 382). Dr. Jan then concluded in the medical source statement that Smith had "normal fine motor skills with normal handling of objects[,]" which seems inconsistent with his statement that she did not have the ability to perform fine and gross movements on a sustained basis. *See* 20 C.F.R. § 416.920c. Thus, the ALJ sufficiently considered the two most important factors ⦙ supportability and consistency ⦙ when considering Dr. Jan's opinions and minimally articulated her reasoning in finding them unpersuasive. No more is required of the ALJ.

3. Nurse Fiandt's Opinion

Smith also suggests that the ALJ improperly considered Nurse Fiandt's June 2022 opinion. (ECF 20 at 10, 12-13). Upon examination, Nurse Fiandt noted Smith had intact remote and recent memory and normal attention span; 5/5 grip strength with the ability to perform fine and gross movements on a sustained basis; normal sensation; 5/5 muscle strength; normal heel/toe and tandem walking; normal range of motion; and a negative straight leg raise test. (AR-1 606-08, 614). Nurse Fiandt concluded:

> Based on physical exam findings, medical history and imaging/laboratory results, the patient can sit for 10 minutes and stand for 20 minutes. Patient can walk for 2 blocks before stopping to rest. Patient has normal fine motor skills with normal handling of objects. Normal concentration and social interaction. Patient indicates understanding throughout the examination and elicits cognizance. Remote and recent memory intact. Normal hearing, speech and vision. [S]he can carry twenty pounds short distances. She cannot carry 20 lbs for a long distance. [S]he can lift ten pounds over their head one time.

(AR-1 614-15).

The ALJ discussed Nurse Fiandt's opinion, stating:

> [D]uring another consultative examination with a different provider, Lauren Fiandt, NP, which occurred in June 2022, just one month after the claimant's final evaluation with Dr. Jan, the claimant exhibited full lumbar range of motion, a stable gait without an assistive device, and 5/5 bilateral lower extremity strength (Ex. 35F).
>
> After Ms. Fiandt's findings, in November 2022, the claimant walked with an intact gait (Ex. 59F p. 243), and outpatient fall risk assessments completed in May and December 2022, as well as June and July 2023, all highlight that the claimant did not use a walker, crutch, cane, wheelchair, or furniture to ambulate. (59Ex. 59F p. 14, 54, 201, 452).
>
> . . . .
>
> [A]s with the claimant's gait – which was abnormal during the November 2021 and May 2022 consultative examinations with Dr. Jan – during a June 2022 physical consultative examination with Ms. Fiandt, the claimant had 5/5 bilateral grip strength, and she could pinch, grasp, and manipulate small and large objections (ECF 35F). After this examination, there is no clinical evidence of worsening or

11

symptom complaints that the claimant's ability to use her hands significantly declined (Ex. 72F).

(AR 1662, 1664). The ALJ then reached her determination on the persuasiveness of Nurse

Fiandt's opinion, stating:

> The undersigned was also not persuaded by the June 2022 opinions given by consultative examiner Ms. Fiandt, which also suggested that the claimant could not even sustain the demands of sedentary work. More specifically, Ms. Fiandt opined that the claimant can sit for 10 minutes and stand for 20 minutes, she can walk for two blocks before stopping to rest, she cannot carry 20 pounds for a long distance, and she can lift 10 pounds overhead at once. Like Dr. Jan's May 2022 opinion, Ms. Fiandt generically stated that her opinions were based on physical examination findings, the claimant's medical history, and imaging/laboratory results; however, she did not cite to any specific clinical evidence, which, contrary to Ms. Fiandt's opinions, depicts largely normal findings: 5/5 bilateral grip strength; full lumbar range of motion; normal straight leg raise; stable gait sustained without an assistive device; 5/5 bilateral lower extremity strength; and normal respiratory findings (Ex. 35F). In short, Ms. Fiandt's opinions are not supported with a sufficient explanation, and they are not only inconsistent with her own clinical findings, but they are inconsistent with the longitudinal evidence.

(AR 1665). Like Dr. Jan's opinion, Nurse Fiandt recited that her medical source statement was

based on "physical exam findings, medical history and imaging/laboratory results" (AR-1 614),

but it is not readily apparent how Smith's largely normal examination findings supports such

limitations. Nor does Nurse Fiandt offer more a specific explanation. Thus, as with Dr. Jan's

opinions, the ALJ sufficiently addressed the important factors of supportability and consistency

when assessing Nurse Fiandt's opinion and adequately explained her reasoning for finding Nurse

Fiandt's opinion unpersuasive. *See* 20 C.F.R. § 416.920c. No remand is warranted based on the

ALJ's consideration of Nurse Fiandt's opinion.

### 4. The State Agency Physicians' Opinions

Smith also argues in her opening brief that the ALJ found all the opinions of the

reviewing state agency physicians unpersuasive, which "created an evidentiary gap" and

"required [the ALJ] to play doctor" because he did not rely on any medical opinions when

crafting the physical RFC. (ECF 20 at 13). In light of this purported evidentiary gap, Smith faults

the ALJ for failing to recontact Dr. Jan and Nurse Fiandt to seek clarification of their opinions.

(*Id.*); *see Kaitlyn v. Kijakazi*, No. 1:21-CV-00931-MDJ-TWP, 2022 WL 1301753, at *3 (S.D. Ind.

May 2, 2022) ("To remedy a lack of sufficient medical evidence, the regulations encourage ALJs

to recontact a claimant's medical sources, request additional evidence, ask the claimant to

undergo a consultative examination at the Agency's expense, and/or ask the claimant or others

for more information." (citing 20 C.F.R. ™416.920b(b)(2))). But Smith is incorrect, as the ALJ

did *not* find all of the opinions of the reviewing state agency physicians' opinions unpersuasive.

To explain, the state agency physicians who reviewed Smith's records in 2017 concluded

she could perform medium-exertional work with postural and manipulative limitations. (*See* AR

137-38, 149-50, 1664). The reviewing state agency physicians from 2020 found there was

insufficient evidence to evaluate Smith's claim. (*See* AR 786-87, 796, 1646). In 2022, the

reviewing state agency physician at the initial level did not issue a functional capacity finding.

(AR 1664, 1790, 1792). However, on reconsideration in June 2022, J.V. Corcoran, M.D., another

reviewing state agency physician, found that Smith could lift or carry ten pounds frequently and

twenty pounds occasionally; stand or walk up to six hours in an eight-hour workday; sit for up to

six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb;

but must avoid concentrated exposure to wetness and hazards. (AR 1800).

The ALJ considered all these state agency physicians' opinions. (AR 1664-66).

Ultimately, the ALJ "agreed with and was persuaded by" the opinion of Dr. Corcoran, whose

limitations were consistent with an RFC for light work. (AR 1664).[3] The ALJ also found the

---

[3] Light work requires lifting not more than 20 pounds occasionally with frequent lifting or carrying of objects
weighing up to 10 pounds, and standing or walking, on and off, for up to six hours in an eight-hour workday. *See* 20
C.F.R. § 416.967(b); SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983); *see also Lorenzo K. v. Comm'r of Soc.
Sec.*, No. 3:23-CV-550-SJF, 2025 WL 938495, at *7 (N.D. Ind. Mar. 27, 2025),

manipulative limitations articulated by the state agency physicians in 2017 persuasive, but due to

Smith's subsequent bilateral thumb surgery, the ALJ further limited her to frequent handling and

fingering with both upper extremities, no work requiring a forceful grip or grasp, and no

climbing ladders, ropes, or scaffolds. (AR 1665). So contrary to Smith's assertion, the ALJ relied

on at least two physicians' opinions of record when crafting the physical RFC, dissipating

Smith's argument that the ALJ "played doctor" due to an evidentiary gap in the record. An ALJ is

"under no obligation to re-contact" a medical source of record if the ALJ has "sufficient evidence

upon which to make" an RFC assessment. *Gase v. Comm'r of Soc. Sec.*, No. 1:23-cv-11295,

2024 WL 3565473, at *5 (N.D. Ind. July 25, 2024) (citation omitted).

    5. <u>Sedentary Work</u>

    As a final comment, the Court observes that even if the ALJ had limited Smith to

sedentary work, rather than light work, the outcome here would not change. Sedentary requires

lifting objects up to ten pounds, sitting up to six hours in an eight-hour workday, and walking or

standing up to two hours in an eight-hour workday. *See Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.

1995); 20 C.F.R. ™416.967(a).

    At the supplemental administrative hearing on January 18, 2024, the VE testified that that

if a person with Smith's RFC were additionally limited to sedentary work, she could still perform

the representative jobs of document preparer (19,000 jobs), hand mounter (9,000 jobs), and

semiconductor bonder (16,000 jobs). (AR 1710-11); *see Zych v. Comm'r of Soc. Sec.*, No. 1:20-

cv-414-SLC, 2021 WL 5319880, at *5 (N.D. Ind. Nov. 16, 2021) (concluding that 41,000 jobs in

the national economy is a "significant number" of jobs for purposes of the ALJ's step-five

determination); *Levitz v. Comm'r of Soc. Sec.*, 1:20-cv-00407-SLC, 2022 WL 110239, at *4

(N.D. Ind. Jan. 12, 2022) (concluding that 37,700 jobs in the national economy is a "significant

number" of jobs for purposes of the ALJ's step-five determination). The VE further estimated that there were approximately 3,519,000 jobs in the national economy that a person with Smith's RFC could perform, and 17,054,000 jobs if that person were additionally limited to sedentary work. (AR 1711-12).

"No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (collecting cases). Here, the VE's testimony pertaining to sedentary work bolsters the Court's conclusion that a remand is not warranted on the basis of the ALJ's consideration of Dr. Jan's and Nurse Fiandt's opinions. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (acknowledging remand based on harmless error is a "waste of time" where the error would not change the outcome of the ALJ's decision). Therefore, the Court will move on to Smith's second argument.

### D. The Opinions of the Mental Health Providers and the Mental RFC

Smith argues that the ALJ improperly considered the opinions of the mental health medical experts and consulting examiner, and erred by failing to include all of Smith's mental limitations in the RFC. (ECF 20 at 13-18). Contrary to Smith's assertion, the ALJ properly considered the various mental health opinions of record and assigned a mental RFC supported by substantial evidence.

#### 1. Applicable Law

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations

15

or restrictions, but the *most*." *Id.* (footnote omitted); *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1). The RFC assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(3). When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. *See* 20 C.F.R. § 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citation omitted); *see also* 20 C.F.R. § 416.945(e).

　　2. The Opinions of Dr. Miller, Dr. Mayle, and Dr. Lace

　　Smith contends the ALJ failed to properly consider the opinions of Amanda Mayle, Psy.D, H.S.P.P., who examined Smith, and Linda Miller, D.O., and Michael Lace, Psy.D., who testified as medical experts at the administrative hearings. (*See* ECF 20 at 13-18). Dr. Mayle examined Smith via a telehealth visit in February 2022 at the request of the state agency. (AR-1 576-81). She noted Smith's report of panic attacks, difficulty concentrating, racing thoughts, and fear of leaving the house. (AR-1 576, 580). Dr. Mayle wrote that Smith presented with "significant mood and behavioral instability that . . . appear to be affecting her functioning." (AR-1 579). A mental status exam revealed adequate immediate and remote memory and marginal recent memory, successful serial 7's and calculations, adequate insight and judgment, good attention, a depressed and anxious mood and flat affect, and normal thought process. (*Id.*).

Smith's thought content included overvalued ideas, obsessions, preoccupations, suicidal ideation, and that she "sees bugs and things moving that no one else sees." (AR-1 576, 580).

Dr. Miller testified as an impartial medical expert at the September 20, 2023, administrative hearing. (AR 1744-56). Dr. Miller opined that Smith had "moderate" difficulties in the ability to maintain concentration, persistence, or pace, and that Smith should be limited to "simple and repetitive work" due to her anxiety. (AR 1755).

Dr. Lace testified as an impartial medical expert at the January 18, 2024, supplemental administrative hearing. (AR 1695-1706). Dr. Lace opined that Smith experienced "a period of de-concentration back in June of 2021" due to the "discomfort and pain" associated with her physical issues, which would justify a "moderate" limitation in her ability to maintain concentration, persistence, or pace. (AR 1698). Dr. Lace testified that Dr. Mayle's February 2022 opinion stood "in pretty stark contrast to the rest of the record." (AR 1699). Dr. Lace explained that in reviewing the 17,000-page record, "most" of Smith's mental status exams were "normal," though there were periods where she experienced "increased situational stress . . . as well as medical challenges that . . . interfere [with her ability to maintain concentration, persistence, or pace.]" (AR 1698; *see* AR 1705). Dr. Lace did note that if Smith were experiencing active pain issues or medical problems, that could create more anxiety which could exacerbate her mental limitations. (AR 1700). There was no evidence of a cognitive disorder, as Smith's intellectual and cognitive functioning were in the average range. (AR 1699). Dr. Lace also opined that Smith had "mild" limitations in understanding, remembering and carrying out instructions and tasks, and in adapting or managing oneself, but "moderate" limitations in interacting with others. (AR 1699, 1701). Dr. Lace concluded:

> [Smith] should avoid work involving fast-paced production requirements, such as
> high-speed production lines, where others are depending on [her;] . . . can tolerate

occasional interactions with coworkers, supervisors, and the general public[;] . . . can respond appropriately to usual work situations, and . . . can deal with routine changes in a routine work setting, . . . with few if any changes in terms of work setting tools and processes.

(AR 1702-03). Dr. Lace stated that his opinion was based on Smith's "overall function," including any "waxing and waning of symptoms." (AR 1703). Dr. Lace observed that even when Smith's symptoms were at their worst, they were not at a "marked" limitation level for a one-year period. (*Id.*).

### 3. The ALJ's Consideration of the Medical Source Opinions and Assignment of the RFC

After considering the evidence of record, including the opinions of Dr. Mayle, Dr. Miller, and Dr. Lace, the ALJ assigned Smith the following mental RFC:

[T]he claimant should avoid work activity requiring fast paced production requirements, such as high speed production lines where others are depending on the claimant, she can tolerate speed production lines where others are depending on the claimant, she can tolerate occasional interactions with coworkers, supervisors and the general public, she can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting, with few, if any, changes in terms of work setting, tools, and processes.

(AR 1656). In doing so, the ALJ explained that she was "most persuaded by Dr. Lace's hearing testimony, given that he had the opportunity to consider all of the medical evidence over several years, and his opinions and rationale are supported by and consistent with the record." (AR 1659). The ALJ penned three paragraphs about Dr. Lace's testimony (AR 1659-60), indicating that the ALJ "largely agrees with Dr. Lace's limitations, which he sufficiently supported with explanations that included specific citations to evidence, as well as the waxing and waning nature of symptoms throughout the record as a whole" (AR 1660). The ALJ further explained: "With social stressors minimized, [Smith] may still have some days where anxiety or depression are present, and to accommodate those mood fluctuations, [the ALJ] also precluded work on a high speed production line and limited the claimant to a fairly static work setting . . . ." (*Id.*).

18

The ALJ added that he was "not persuaded" by the 2022 state agency doctors' findings in February and May 2022 that limited Smith to "simple work[.]" (AR 1660; *see* AR 1794, 1803). The ALJ stated that this limitation was "not supported by the intelligence, judgment, memory, concentration, or attention mental status examinations throughout the record." (AR 1660 (citations omitted); *see* AR 1655-56 ("The [ALJ] agrees with Dr. Lace's well-supported opinion that the claimant had mild limitations with understanding, remembering, or applying information¦ there was no evidence to support a cognitive disorder, and the claimant's intellectual and cognitive functioning were mostly described as being in the average range.")). Likewise, the ALJ articulated that she was "not persuaded" by the testimony of Dr. Miller, who opined that Smith should be limited to "simple and repetitive" work (AR 1755), "because this testimony was inconsistent with the regulations." (AR 1650).

4. <u>Analysis of Smith's Arguments Relating to the Medical Opinions and Mental RFC</u>

Smith argues the ALJ erred by failing to explain why Dr. Miller's testimony "was inconsistent with the regulations." (ECF 20 at 14 (citing AR 1650)). Smith also faults the ALJ for failing to discuss Dr. Miller's statement that Smith's anxiety would cause "additional stress" and make it more difficult for her to maintain concentration, persistence, or pace. (*Id.* at 15).

To reiterate, an ALJ is "subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053 (citations omitted). A brief review of Dr. Miller's testimony allows the Court to easily trace the path of the ALJ's reasoning, as Dr. Miller's testimony was internally inconsistent and, in fact, rather bumbling at times. *See Elliott v. Barnhart*, No. 02 C 50256, 2003 WL 21696198, at *6 (July 18, 2003) ("Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning." (citations omitted)). First Dr. Miller testified that Smith's mental impairments were "not severe." (AR

1753). However, later in the hearing Dr. Miller testified that Smith had a moderate limitation in maintaining concentration, persistence, or pace due to her anxiety. (AR 1753-54). When the ALJ pointed out this inconsistency, Dr. Miller responded: "Okay, Well, then – okay. So severe, severe. So severe is whether she meets or equals a listing and if she has two marked limitations." (AR 1754). The ALJ then stated, and correctly so: "That is not a correct statement of our regulations." (*Id.*).

Similarly, Dr. Miller initially testified that Smith had no limitations in interacting with others. (AR 1753). Yet, when the ALJ subsequently inquired about Smith's work capacity, Dr. Miller again answered inconsistently, stating that Smith should be limited to "simple and repetitive work" and "*should not work directly with the public.*" (AR 1755 (emphasis added)). When the ALJ asked Dr. Miller to explain this discrepancy, Dr. Miller provided yet another unclear response. (AR 1755-56). At that point, the ALJ adjourned the hearing and stated that the matter would be scheduled for a supplemental hearing. (AR 1756). As stated earlier, a different medical expert, Dr. Lace, testified at the supplemental hearing.

Smith now argues that the ALJ erred by failing to consider Dr. Miller's testimony that Smith should be limited to simple and repetitive work due to her anxiety. (ECF 20 at 14). But the ALJ minimally articulated why she did not credit Dr. Miller's testimony │ because she found it "inconsistent with the regulations." (AR 1650). This reason for discounting Dr. Miller's testimony is adequately supported by the hearing transcript in which the inconsistent and confusing nature of Dr. Miller's testimony is readily apparent. (*See* AR 1753-56). In any event, the ALJ explained why she did not limit Smith to "simple" work, which was also recommended by the state agency reviewing psychologists in February and May 2022. (AR 1794, 1803). The ALJ viewed that simple work was "not supported by the intelligence, judgment, memory,

concentration, or attention mental status examinations throughout the record." (AR 1660 (citations omitted); *see* AR 1700 ("There's no evidence to support a cognitive disorder of any kind. Most of the time the claimant's intellectual functioning are described as being in the average range.")).

Smith argues that the ALJ "played doctor" when reasoning that these clinical findings were inconsistent with a need for a limitation to simple work. (ECF 20 at 15). Perhaps the ALJ's statement is a bit narrow in its reasoning. Nevertheless, as to Smith's anxiety, the ALJ was persuaded by Dr. Lace's testimony that even though Smith's symptoms "waxed and waned," she would still have just a moderate limitation in maintaining concentration, persistence, or pace. (AR 1660-61; *see* AR 1699 ("It was the opinion that there was good attention but variable memory, notable depression, anxiety, visual hallucinations, suicidal ideation . . . . [t]hat . . . would support the moderate limitation . . . . ")). Thus, the ALJ did not ignore the limitation to simple work in the record; rather, the ALJ simply found it less persuasive than Dr. Lace's opinion testimony. *See Bremer v. Comm'r of Soc. Sec.*, No. 1:22-cv-00272-SLC, 2023 WL 6284630, at *10 (N.D. Ind. Sept. 27, 2023) (When the ALJ was "'presented with conflicting medical opinions,' [she] fulfilled [her] 'duty to resolve that conflict.'" (quoting *Vrooman v. Kijakazi*, No. 20-2939, 2021 WL 3086196, at *2 (7th Cir. July 21, 2021))).[4]

Moving on, Smith also argues that the ALJ "[did] not consider Dr. Mayle's opinion that [Smith's] 'mood and behavior instability' affected her functioning." (ECF 20 at 17; *see* AR-1

---

[4] Even if the ALJ had included the limitation to simple work in the RFC, it would likely not change the outcome here because all the representative jobs cited by the ALJ at step five were unskilled work. (AR 1668). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985). "[M]inimal articulation is all this is required and cases will not be remanded merely to perfect an ALJ's decision where the outcome could be no different." *Fairley v. Astrue*, No. 07-22-3, 2008 WL 11637524, at *7 (C.D. Ill. Nov. 7, 2008) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

579). Again, Smith's argument overstates the ALJ's duty of "minimal articulation[.]" *Fairley*, 2008 WL 11637524, at *7. The ALJ adequately summarized the subjective complaints, objective findings, and the opinions in Dr. Mayle's evaluation, noting Smith's complaints that she was afraid to leave the house, had panic attacks, and saw bugs no one else saw. (AR 1659). The ALJ further noted Dr. Mayle's clinical findings that Smith had a depressed and anxious mood, suicidal ideation, and a marginal remote memory, but adequate judgment, insight, and immediate and remote memory. (*Id.*). The ALJ discussed that Smith cooperated throughout Dr. Mayle's evaluation, had good attention, and could complete serial 7's. (*Id.*). In discounting Dr. Mayle's opinion, the ALJ relied on Dr. Lace's testimony that Dr. Mayle's findings were "in pretty stark contrast to the rest of the record." (AR 1659; *see* AR 1699). That the ALJ did not expressly mention every single statement in Dr. Mayle's evaluation is not grounds for remand. *See Deborah M. v. Saul*, 994 F.3d 785, 789-90 (7th Cir. 2021) ("[Q]uite simply, the ALJ did not ignore an entire line of evidence that supported a finding of disability . . . ." (citation omitted)).

Smith also seems to suggest that the ALJ ignored evidence prior to 2021 that supported Dr. Mayle's opinion. (ECF 20 at 16-17 (citing AR 558, 560, 591, 1531-32, 1534, 1593, 1595)). Not so. The ALJ quite thoroughly discussed the evidence prior to 2021. (*See* AR 1653-54). For example, the ALJ noted Smith's June 2017 emergency room visit for a panic attack after she fought with her boyfriend. (AR 1653; *see* AR-2 1878). The ALJ considered other mention of panic attacks in February 2018 and June 2019, a report of worsening anxiety attacks in May 2020, and the improvement that occurred after Smith's dosage of Prozac was increased in June 2020. (AR 1653; *see* AR 558-64, 1352, 1358, 1531-32, 1534; AR-3 1902-03). Smith's "claim[] that the ALJ needed to do more . . . . stands at complete odds with what an ALJ must do to

support its decision with substantial evidence, a standard that the Supreme Court has emphasized is light." *Warnell*, 97 F.4th at 1051.

In sum, Smith's arguments that the ALJ erred by failing to include a limitation to simple and repetitive work in the RFC as opined by Dr. Miller, consider Dr. Lace's testimony that Smith's her pain and physical problems would exacerbate her mental limitations, and address Dr. Mayle's statement that her mental instability affected her functioning and how the mental health evidence prior to 2021 supported Dr. Mayle's opinion, are unpersuasive. The ALJ adequately discussed the mental health evidence of record, resolved conflicts among the medical opinions, sufficiently articulated her reasoning applicable thereto, and assigned an RFC that is supported by substantial evidence. "[E]ven if reasonable minds could differ concerning whether [Smith] is disabled, [the Court] must nevertheless affirm the ALJ's decision denying her claims if the decision is adequately supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citation and internal quotation marks omitted). Here, the ALJ's decision is adequately supported, and therefore, the ALJ's decision will be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Smith.

SO ORDERED.

Entered this 30th day of September 2025.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge

23